22-2806
*Kapoor v. DeMarco*

# In the
# United States Court of Appeals
# For the Second Circuit

_____

August Term, 2023
No. 22-2806

MONIKA KAPOOR,
*Petitioner-Appellant,*

*v.*

VINCENT F. DEMARCO,
UNITED STATES MARSHAL FOR THE EASTERN DISTRICT OF NEW YORK,
AND
ROBERTO CORDEIRO,
CHIEF PRETRIAL SERVICES OFFICER FOR THE EASTERN DISTRICT OF NEW
YORK,
*Respondent-Appellees.*

_____

On Appeal from a Judgment of the United States District Court for
the Eastern District of New York.

_____

ARGUED: APRIL 12, 2024
DECIDED: MARCH 26, 2025

_____

Before: NARDINI, MENASHI, and LEE, *Circuit Judges.*

_____

Petitioner-Appellant Monika Kapoor is an Indian citizen facing extradition from the United States to face criminal charges in India. The United States District Court for the Eastern District of New York (Robert M. Levy, *Magistrate Judge*) determined that Kapoor was extraditable under the two countries' bilateral extradition treaty. The Secretary of State then issued a surrender warrant after rejecting Kapoor's claims that she will likely be tortured if returned to India, and that her extradition would therefore violate the Convention Against Torture. Kapoor filed a petition for a writ of habeas corpus in the district court, challenging the Secretary's decision. The district court (Frederic Block, *District Judge*) denied Kapoor's petition, finding that 8 U.S.C. § 1252(a)(4), added by the REAL ID Act of 2005, divested the court of jurisdiction to hear her claim. Kapoor appealed.

We agree with the district court. The Convention is not a self-executing treaty, and the courts can review claims arising under it only as authorized by Congress. Consistent with the test articulated by the Supreme Court in *I.N.S v. St. Cyr*, 533 U.S. 289 (2001), Section 1252(a)(4) contains a clear statement that permits claims under the Convention to be raised exclusively in petitions for review of immigration removal orders, and specifically and unambiguously bars judicial review of such claims in habeas proceedings except in limited circumstances not presented here. This construction of the statute does not violate the Suspension Clause in the extradition context because of the longstanding "rule of non-inquiry," which precludes American habeas courts from considering the anticipated treatment of an extraditee like Kapoor in the country to which she is being extradited. We therefore AFFIRM.

————————————

DANIEL I. PHILLIPS, Gell & Gell, New York, NY, *for Petitioner-Appellant*.

MEREDITH A. ARFA (Susan Corkery, *on the brief*), Assistant United States Attorneys, *for* John J. Durham, United States Attorney for the Eastern District of New York, Brooklyn, N.Y., *for Respondent-Appellees.*

---

WILLIAM J. NARDINI, *Circuit Judge*:

Petitioner-Appellant Monika Kapoor is an Indian citizen facing extradition from the United States to face criminal charges in India. The United States District Court for the Eastern District of New York (Robert M. Levy, *Magistrate Judge*) determined that Kapoor was extraditable under the two countries' bilateral extradition treaty. The Secretary of State subsequently issued a surrender warrant after rejecting Kapoor's claims that she would likely be tortured if returned to India, and that her extradition would therefore violate the United Nations Convention Against Torture (the "Convention" or "CAT") as implemented by the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"). Kapoor then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the Secretary's determination that she be extradited. In her petition, Kapoor renewed the CAT claim she had presented to the Secretary. The district court (Frederic Block, *District Judge*) denied Kapoor's petition, finding that 8 U.S.C. § 1252(a)(4) divested the court of jurisdiction to hear her claim. Kapoor now appeals.

We agree with the district court. This Court previously determined in *Wang v. Ashcroft*, 320 F.3d 130 (2d Cir. 2003), that FARRA did not divest federal courts of habeas jurisdiction to review claims under the Convention, in a case brought by an individual challenging his immigration removal order. Two years after our decision in *Wang*, Congress enacted § 106(a)(1)(B) of the REAL ID Act of 2005, codified at 8 U.S.C. § 1252(a)(4), which expressly provides that notwithstanding any other provision of law "including section 2241 of Title 28, or any other habeas corpus provision," a petition for review of an immigration removal order under 8 U.S.C. § 1252 is the "sole and exclusive means for judicial review of any cause or claim under the [Convention]," with limited exceptions not applicable here. We conclude that consistent with the test articulated by the Supreme Court in *I.N.S v. St. Cyr*, 533 U.S. 289 (2001), Section 1252(a)(4) contains a clear statement that specifically and unambiguously bars federal courts from exercising habeas jurisdiction to review CAT claims in extradition cases. This construction of the statute does not run afoul of the Suspension Clause of the U.S. Constitution because it does not preclude the review of claims historically protected by the writ of habeas corpus. Under the longstanding "rule of non-inquiry," those like Kapoor facing extradition have never been able to obtain habeas relief based on their anticipated treatment in a receiving country, which is at the heart of a CAT claim.

We therefore AFFIRM.

4

## I.  Background

### A. The Extradition Process

Extradition is the formal process by which a person is surrendered by one country to another [1] to face prosecution, or to serve a sentence after conviction, for criminal charges.  Extradition typically occurs pursuant to a treaty. [2]  The statutes governing extradition create a multi-step procedure that divides responsibility for extradition between the Secretary of State and the courts.  *See*

---

[1] The Fifth Circuit has upheld extradition to an international criminal tribunal where authorized by statute.  *See Ntakirutimana v. Reno*, 184 F.3d 419 (5th Cir. 1999) (upholding extradition to the International Criminal Tribunal for Rwanda pursuant to an executive agreement implemented by statute).

[2] The Supreme Court has explained that "the power to provide for extradition is a national power . . . [b]ut, albeit a national power, it is not confided to the Executive in the absence of treaty or legislative provision." *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 8 (1936). Congress has outlined the procedures for international extradition at 18 U.S.C. Chapter 209, §§ 3181-3196. Section 3181(a) provides that those statutory provisions generally apply only "during the existence of any treaty of extradition" between the United States and a foreign government.  Section 3181(b) also authorizes, in very limited circumstances, extradition "in the exercise of comity" and in the absence of an extradition treaty.

The extradition process should not be confused with the immigration removal process.  The extradition process, governed by Chapter 209 of Title 18 of the United States Code, exclusively governs the transfer of persons for the purpose of criminal proceedings, and depending on the relevant treaty, *see* 28 U.S.C. § 3196, may apply to U.S. citizens or foreign citizens.  The immigration removal process, by contrast, is governed by various provisions found in Title 8 of the Code; does not depend on whether the person to be removed faces criminal proceedings abroad; and is necessarily limited to those who are not U.S. nationals or citizens. *See* 8 U.S.C. §§ 1229, 1229a (governing removal of "alien"); *id.* § 1101(a)(3) (defining "alien").

*generally* Restatement (Fourth) of Foreign Relations Law § 428 (Am. L. Inst. 2018) (outlining extradition procedures). The process generally begins[3] with the submission of a formal extradition request by the foreign government to the United States Department of State through the diplomatic channel.[4] The State Department determines whether the request complies with the applicable treaty, and if so, transmits the request to the Office of International Affairs ("OIA") in the Criminal Division of the United States Department of Justice. *See* U.S. Dep't of Just., Just. Manual § 9-15.700.[5] OIA then considers whether the request satisfies the conditions for extradition. *See id.* If so, OIA forwards it to the United States Attorney for the judicial district in which the person being sought is located. *See id.*

---

[3] Most modern extradition treaties also allow a requesting state to preliminarily seek the provisional arrest of a person in cases of urgency, based on a streamlined application that may be submitted either through the diplomatic channel or in other, more direct, ways. *See, e.g.*, Treaty on Extradition, It.-U.S., art. XII, Oct. 13, 1983, 35 U.S.T. 3023 (allowing transmission of provisional arrest request through diplomatic channel or directly between U.S. Department of Justice and Italian Ministry of Justice, including through the communication facilities of the International Criminal Police Organization (Interpol)); *see also* 18 U.S.C. § 3187 (authorizing provisional arrest and detention). Such temporary detention allows time for a requesting state to assemble and transmit its formal request for extradition.

[4] *E.g.*, Treaty on Extradition, India-U.S., art. 9(1), June 25, 1997, T.I.A.S. No. 12873 (hereinafter, the "Treaty") ("All requests for extradition shall be submitted through the diplomatic channel."); *id.* at 9(2)–(4) (listing supporting materials that must be included in an extradition request).

[5] https://www.justice.gov/jm/jm-9-15000-international-extradition-and-related-matters#9-15.700 [https://perma.cc/79D6-GNX4].

The United States Attorney then files a complaint based on the extradition request with the appropriate court[6] and applies for an arrest warrant. 18 U.S.C. § 3184 (authorizing judicial officer to "issue his warrant for the apprehension of the person so charged"). Although the complaint is filed by the United States, we have recognized that it is really "acting for and on behalf of the demanding country, which is the real party in interest." *Skaftouros v. United States*, 667 F.3d 144, 154 n.15 (2d Cir. 2011) (internal quotation marks and alteration omitted). The court then holds a hearing to consider whether the "evidence of criminality" presented by the foreign government is "sufficient to sustain the charge[s]" for which extradition is requested. 18 U.S.C. § 3184. The court's inquiry is a limited one, aimed solely at ascertaining extraditability—that is, the person's eligibility for extradition. The court must determine only "whether a valid treaty exists; whether the crime charged is covered by the relevant treaty; and whether the evidence marshaled in support of the complaint for extradition is sufficient under the applicable standard of proof." *Skaftouros*, 667 F.3d at 154–55 (quoting *Cheung v. United States*, 213 F.3d 82, 88 (2d Cir. 2000)). The hearing is "not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against

---

[6] Section 3184 authorizes filing of the complaint with "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State." As a matter of longstanding practice, such complaints are typically filed in the geographically relevant United States District Court. The complaint may be filed in the United States District Court for the District of Columbia "if the whereabouts within the United States of the person charged are not known or, if there is reason to believe the person will shortly enter the United States." 18 U.S.C. § 3184.

him," *id*. at 155 (quoting *Benson v. McMahon*, 127 U.S. 457, 463 (1888)), nor is it "the occasion for an adjudication of guilt or innocence," *id.* (quoting *Melia v. United States*, 667 F.2d 300, 302 (2d Cir. 1981)). Rather, the extradition hearing is "essentially a preliminary examination to determine whether a case is made out which will justify the holding of the accused and his surrender to the demanding nation." *Lo Duca v. United States*, 93 F.3d 1100, 1104 (2d Cir. 1996) (quoting *Ward v. Rutherford*, 921 F.2d 286, 287 (D.C. Cir. 1990)). [7]

If the court deems the evidence sufficient to sustain the charge under the applicable treaty, the court "shall certify the same" to the Secretary of State. 18 U.S.C. § 3184. Because the judicial officer's

---

[7] The person sought may choose not to contest the extradition request, either by consenting to extradition or waiving it entirely. If the person *consents* to extradition, the court will enter a finding of extraditability and the Secretary of State will issue a surrender warrant as usual. Consent may benefit the person sought by shortening the extradition process somewhat and reducing any period of detention; but it does not pretermit the process entirely. Because the person is being transferred through the formal extradition process, she will enjoy the attendant protections of the "rule of specialty," which generally prohibits a requesting state from prosecuting or punishing the extradited person for charges beyond those contained in the surrender warrant. *See United States v. Rauscher*, 119 U.S. 407, 424 (1886) (interpreting U.S. law to conclude that the extraditee may "be tried only for the offense with which he is charged in the extradition proceedings, and for which he was delivered up"); U.S. Dept. of State, 7 Foreign Affairs Manual § 1631.4, https://fam.state.gov/FAM/07FAM/07FAM1630.html [https://perma.cc/T873-RNJS] (Fugitives who "consent to extradition . . . trigger[] the protection of the rule of specialty."). Alternatively, if the person *waives* extradition, then she is transferred to the requesting state outside the extradition process. The benefit to the person sought is usually a much speedier transfer to the requesting state; the downside to her is that the rule of specialty and any other treaty protections do not apply. *See, e.g., United States v. DiTommaso*, 817 F.2d 201, 211-12 (2d Cir. 1987).

certificate of extraditability does not adjudicate the person's guilt or innocence, but "serve[s] only to insure that his culpability will be determined in another and, in this instance, a foreign forum," it is not considered a final order that can be appealed directly under 28 U.S.C. § 1291. *Jhirad v. Ferrandina*, 536 F.2d 478, 482 (2d Cir. 1976). Rather, the court's finding of extraditability is subject only to limited review through a habeas proceeding. As we have explained: "The rule has long been accepted that a habeas judge can only 'inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.'" *Id.* (quoting *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)).

Upon a judicial finding of extraditability, the Secretary of State must then decide whether to order the person extradited, by issuing a warrant for the person's surrender to the requesting state. In making this decision, the Secretary has "final authority to extradite the fugitive, but is not required to do so." *Lo Duca*, 93 F.3d at 1103; *see also* 18 U.S.C. § 3186 ("Secretary of State *may* order the person . . . to be delivered to any authorized agent of such foreign government") (emphasis added); *United States v. Kin-Hong*, 110 F.3d 103, 109 (1st Cir. 1997) (noting that the Secretary may decline to extradite a fugitive "on any number of discretionary grounds, including but not limited to, humanitarian and foreign policy considerations").

9

## B.  The Convention Against Torture

The Convention provides that "[n]o State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture."  CAT, art. III, Dec. 10, 1984, 1465 U.N.T.S. 85 (1984).[8]  The Convention is a non-self-executing treaty—by its own force, it confers no rights that are enforceable in U.S. courts.  *See Pierre v. Gonzales*, 502 F.3d 109, 114 (2d Cir. 2007); *see also* 136 Cong. Rec. S17486–01, S17492 (daily ed. Oct. 27, 1990) ("[T]he provisions of Articles 1 through 16 of the Convention are not self-executing.").  Following ratification of the Convention, Congress enacted FARRA, which broadly articulated American "policy" as follows:

> It shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States.

---

[8] For purposes of the Convention, torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. It does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions."  CAT, art. I.

Pub. L. No. 105–277, div. G, Title XXII, § 2242(a), 112 Stat. 2681–822 (1998) (codified as Note to 8 U.S.C. § 1231). In addition, Congress directed the heads of the appropriate agencies to "prescribe regulations to implement the obligations of the United States under Article 3." FARRA § 2242(b).

Pursuant to FARRA, the Department of State promulgated a series of regulations that outline its CAT obligations when extraditing fugitives. The regulations identify the Secretary of State as "the U.S. official responsible for determining whether to surrender a fugitive to a foreign country by means of extradition." 22 C.F.R. § 95.2(b). They state that "to implement the obligation assumed by the United States pursuant to Article 3 of the Convention, the Department considers the question of whether a person facing extradition from the U.S. 'is more likely than not' to be tortured in the State requesting extradition when appropriate in making this determination." *Id.* They further state that "[i]n each case where allegations relating to torture are made[,] . . . appropriate policy and legal offices [shall] review and analyze information relevant to the case in preparing a recommendation to the Secretary as to whether or not to sign the surrender warrant." *Id.* § 95.3(a). And, they provide that "[d]ecisions of the Secretary concerning surrender of fugitives for extradition are matters of executive discretion not subject to judicial review." *Id.* § 95.4.

### C. Procedural History

Monika Kapoor is an Indian citizen who entered the United States in 1999 and overstayed her visa. In March 2010, Kapoor was

placed in immigration removal proceedings. She subsequently applied for asylum and withholding of removal and relief under the Convention. On April 26, 2010, an Indian court issued a warrant for Kapoor's arrest based on the following five violations of the Indian Penal Code ("IPC"):

1. Cheating and dishonestly inducing delivery of property, in violation of IPC § 420;

2. Forgery of valuable security, will, etc., in violation of IPC § 467;

3. Forgery for the purpose of cheating, in violation of IPC § 468;

4. Using as genuine a forged document, in violation of IPC § 471; and

5. Criminal conspiracy to commit the aforementioned offenses, in violation of IPC § 120B.

These violations stem from allegations that Kapoor and her two brothers forged documents for jewelry transactions and then used those documents to obtain licenses from the Indian government to import raw materials duty free. As a result of that purported scheme, the Indian government allegedly lost approximately $679,000. In October 2010, the Indian government submitted a formal request to the Department of State for Kapoor's extradition pursuant to the Treaty on Extradition between the United States and India. Article 2 of the Treaty defines an extraditable offense to be one that is

punishable in both India and the United States by imprisonment for a period of more than one year or by a more severe penalty.

On May 2, 2011, the United States filed a complaint in the United States District Court for the Eastern District of New York, seeking an arrest warrant based on India's extradition request. A magistrate judge issued a warrant for Kapoor that same day. Kapoor was arrested, arraigned, and released on bail pending the resolution of the extradition proceedings. Kapoor's immigration proceedings were held in abeyance pending the resolution of the extradition proceedings.

On July 28, 2011, the magistrate judge held an extradition hearing to determine whether to grant the government's request for a certificate of extraditability. The only argument that Kapoor raised at the proceeding was that there was no probable cause to sustain the charges against her. On April 17, 2012, the magistrate judge granted the government's request and certified the extradition request. *In re Extradition of Kapoor*, No. 11-M-456 (RML), 2012 WL 1318925 (E.D.N.Y. Apr. 17, 2012). In granting the request, the magistrate judge concluded that the Indian government's proof met the probable cause standard for each of the five charges against Kapoor. *Id.* at *5–6. The magistrate judge denied, however, the government's motion to revoke Kapoor's bond and remand Kapoor into custody until the completion of the extradition process.

On June 27, 2012, Kapoor filed her first of three petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. In that petition,

Kapoor argued that the magistrate judge erred by excluding certain evidence that she offered at the extradition hearing and that the Treaty's dual criminality requirement had not been satisfied. On May 7, 2014, the district court denied the petition, concluding that the magistrate judge properly excluded Kapoor's proffered evidence and that dual criminality was shown. *Kapoor v. Dunne*, No. 12-cv-3196 (FB), 2014 WL 1803271 (E.D.N.Y. May 7, 2014). Kapoor appealed the district court's decision, and on June 2, 2015, this Court affirmed the denial of the petition. *Kapoor v. Dunne*, 606 F. App'x 11, 12 (2d Cir. 2015).

On July 24, 2015, Kapoor submitted materials to the Secretary of State, requesting that the Secretary deny the Indian government's extradition request because Kapoor would be at risk of harm if surrendered to India. On September 18, 2015, the State Department granted India's request and issued a warrant authorizing Kapoor's surrender to India under 18 U.S.C. § 3186 and the Treaty (the "Surrender Warrant"). Upon Kapoor's request, the Department provided an explanation for the Surrender Warrant via a letter dated September 25, 2015. In that letter, the Department confirmed that it reviewed all materials submitted directly to the Department as well as the pleadings and filings submitted to the district court. The Department explained that under the Convention,

> the United States has an obligation not to extradite a person to a country "where there are substantial grounds for believing that he would be in danger of being subjected to torture." Pursuant to the implementing regulations found at 22 C.F.R. part 95, this obligation

involves consideration of "whether a person facing extradition from the U.S. 'is more likely than not' to be tortured in the State requesting extradition."

Gov't App'x 268. The Department then confirmed "that the decision to surrender Monika Kapoor to India complies with the United States' obligations under the Convention and its implementing statute and regulations." *Id.* at 269.

On October 7, 2015, Kapoor filed a second habeas petition pursuant to 28 U.S.C. § 2241, challenging the Department's extradition decision. With her petition, Kapoor provided additional evidence in support of her CAT claim. After the Department agreed to consider any new materials in support of Kapoor's CAT claim, Kapoor withdrew the petition without prejudice to renewal if the Department decided not to deny extradition.

By a letter dated August 4, 2016, the Department notified Kapoor that it decided to reaffirm the prior authorization of Kapoor's surrender. The Department stated that it reviewed the supplemental materials that Kapoor submitted directly to the Department on October 15, 2015, as well as the materials submitted to the district court in support of her second habeas petition. The Department again confirmed "that the decision to surrender Monika Kapoor to India complies with the United States' obligations under the Convention and its implementing statute and regulations." *Id.* at 277.

On October 25, 2016, Kapoor filed a third habeas petition pursuant to 28 U.S.C. § 2241, which is the petition at issue in this appeal. Kapoor asked the district court to grant the following relief:

1. Assume jurisdiction over her claims, including humanitarian and torture claims;

2. Grant a preliminary injunction prohibiting her extradition or surrender to Indian authorities "while this matter is pending in the Courts";

3. Enter an order regarding depositions Kapoor offered to give in the United States to the Indian government;

4. Grant a writ of habeas corpus directing the United States to release Kapoor from "executive detention"; and

5. Grant any further just and proper relief.

Kapoor alleged that the Secretary's decision to extradite her violated her procedural and substantive due process rights, CAT, and FARRA. In particular, Kapoor contended that she would likely be tortured if returned to India and that the Secretary erred by finding the contrary. On December 29, 2016, the United States filed an opposition to the petition.

On November 17, 2021, Kapoor filed a motion to supplement the record. In the motion, Kapoor stated that two of the charges against her—specifically, the violations of IPC §§ 467 and 468—had been dismissed. Additionally, she stated that her two co-defendants (her brothers) resolved the remaining three charges by paying fines. She attached a letter from an Indian law firm, which stated that the

16

Indian court indicated that it would permit Kapoor to resolve the three remaining charges with fines. Thus, Kapoor argued that she was no longer being charged with an extraditable offense because none of the charges against her required imprisonment.

On November 18, 2021, the district court held oral argument and directed the parties to file supplemental briefing on the relevant issues, including the issue of whether the district court had jurisdiction to review the Secretary's determination of Kapoor's CAT claim. After the hearing, the Indian government provided a series of updates which confirmed that Kapoor was no longer charged with violations of IPC §§ 467 and 468 but clarified that the extradition request was still valid because the remaining charges against Kapoor are punishable by terms of imprisonment exceeding one year.

On January 26, 2022, Kapoor filed a supplemental brief pursuant to the district court's request at oral argument. Kapoor argued that the district court had jurisdiction to adjudicate her CAT claim. She also argued that the district court's certification of the extradition request was stale because of the dismissal of the two charges under IPC §§ 467 and 468 and because the remaining charges could be resolved by fines (and thus became non-extraditable offenses).

In a letter dated February 7, 2022, the Indian government stated that it (and the Indian court) never offered to resolve the remaining charges against Kapoor with a fine and that it was "misleading and false" for Kapoor to state that her co-defendants resolved the

remaining three charges by only paying fines.  Gov't App'x 292.  The Indian government clarified that the Indian court imposed fines on the co-defendants and considered that the co-defendants had already spent considerable time in custody and sentenced them to time served.  The Indian government also confirmed the information provided in its previous updates.

On March 4, 2022, the Department notified Kapoor that (1) it received the February 7, 2022, letter from the Indian government; and (2) on March 3, 2022, it issued an amended warrant for Kapoor's surrender for the remaining three charges (the "Amended Surrender Warrant") after reviewing all pertinent information including the materials submitted to the district court.  The Department later confirmed in a sworn declaration that in connection with issuing the Amended Surrender Warrant, it reviewed all the materials that Kapoor submitted to the district court and to the Department through March 3, 2022.  The declaration further stated that the decision to issue the Amended Surrender Warrant "was based on the Department's analysis that no information received subsequent to the issuance of the initial surrender warrant in this case would require the Department to reassess its prior analysis regarding Ms. Kapoor's claims that she would likely be tortured or mistreated if extradited." *Id.* at 298 ¶ 8.  The declaration confirmed that the Amended Surrender Warrant "complies with the United States' obligations under the Convention and its implementing statute and regulations." *Id.*

On March 8, 2022, Kapoor filed an amended supplemental brief, which was substantially the same as her initial supplemental

brief. In her amended supplemental brief, Kapoor acknowledged the Amended Surrender Warrant. She argued that her case required further review for staleness. In particular, she requested that the district court review whether there still is an extraditable offense and whether the court's certificate of extraditability should be revoked. In support of her argument, she claimed that there was new evidence from the Indian court proving that the two charges against her had been dismissed but that there had been no new determination from the Department since 2016. On April 28, 2022, the United States filed a supplemental memorandum, arguing that the district court did not have jurisdiction to review Kapoor's CAT claim, among other things.

On September 20, 2022, the district court denied Kapoor's petition for lack of subject matter jurisdiction. *Kapoor v. Demarco*, No. 16-cv-5834 (FB), 2022 WL 4357498 (E.D.N.Y. Sept. 20, 2022). The district court acknowledged that although this Court previously held that FARRA did not deprive federal courts of jurisdiction to address CAT claims raised in habeas petitions, Congress had enacted 8 U.S.C. § 1252(a)(4) through the REAL ID Act. Citing D.C. Circuit precedent, the district court stated that Section 1252(a)(4) established that an individual facing extradition "possesses no statutory right to judicial review of conditions in the receiving country." *Id.* at *2 (quoting *Omar v. McHugh*, 646 F.3d 13, 18 (D.C. Cir. 2011)). The district court further held that the lack of judicial review on this issue does not violate the Suspension Clause of the Constitution, because the writ was not historically available to those facing extradition based on claims of conditions in the receiving country.

This appeal followed.

## II.     Discussion

In reviewing the denial of a habeas petition brought pursuant to 28 U.S.C. § 2241, this Court examines de novo legal questions affecting subject matter jurisdiction. *See Wang*, 320 F.3d at 139–40.

A district court may grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Kapoor's habeas petition rests on the central claim that the Department of State failed to conduct a meaningful review of her claim that she will likely be tortured if she is extradited to India, in violation of the Convention.[9] Because CAT is not a self-executing treaty, Kapoor must rely on the rights "contained in [the Convention's] implementing statutes and

---

[9] We understand Kapoor's habeas petition to be seeking release from detention that is ongoing because of the Secretary's decision.  Given that Kapoor is subject to a court order releasing her on bond with restrictive conditions, she is in custody for the purposes of habeas corpus.  *See Hoffler v. Bezio*, 726 F.3d 144, 153 n.8 (2d Cir. 2013) ("We note only that the Supreme Court has broadly construed 'custody' for purposes of habeas corpus, so as to reach restraints on liberty even when a defendant is not in actual, physical custody, as for example when he is subject to the court's criminal jurisdiction though released on bail or on his own recognizance.") (internal quotation marks and citations omitted).  The Supreme Court has emphasized that "[h]abeas has traditionally been a means to secure *release* from unlawful detention" rather than "to obtain authorization to stay in this country." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020).  For that reason, a different petitioner, not detained or released on bond or other restrictions, might not be able to meet the custody requirement.  *See also id.* at 117 ("The writ simply provided a means of contesting the lawfulness of restraint and securing release."); *id.* at 122 (explaining that the petitioner had no right to habeas review because "the legality of his detention [was] not in question").

regulations." *Yuen Jin v. Mukasey*, 538 F.3d 143, 159 (2d Cir. 2008). That implementing statute is FARRA.

As noted above, FARRA provides that "[i]t shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture . . . ." FARRA § 2242(a). As originally enacted, FARRA also contained a provision that expressly authorized review of CAT claims through the procedures outlined for petitions for review of immigration removal orders, but otherwise limited other forms of judicial review:

> Notwithstanding any other provision of law, . . . nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or this section, . . . except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C. [§] 1252).

FARRA § 2242(d).

We have previously considered whether this statutory provision limits individuals contesting removal orders based on CAT claims to petitions for review filed directly in the Court of Appeals and bars them from raising such claims in habeas petitions. In *Wang*, we held that FARRA was not sufficiently "specific and unambiguous" to bar habeas jurisdiction over such claims, explaining that "a statute must, at a minimum, explicitly mention either 'habeas corpus' or '28

21

U.S.C. § 2241' in order to limit or restrict [habeas] jurisdiction."  320 F.3d at 141 (internal quotation marks omitted).

Two years after our decision in *Wang*, Congress clarified FARRA through the REAL ID Act of 2005.  As relevant here, the REAL ID Act added a new paragraph to 8 U.S.C. § 1252 limiting judicial review of CAT claims.  The new provision, codified at 8 U.S.C. § 1252(a)(4), added specific references to both Section 2241 and to "habeas corpus," as we had indicated in *Wang* would be necessary to foreclose habeas review:

> Notwithstanding any other provision of law (statutory or nonstatutory), *including section 2241 of title 28, United States Code, or any other habeas corpus provision*, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section [8 U.S.C. § 1252] shall be the sole and exclusive means for judicial review of any cause or claim under [the Convention] . . . .

Pub. L. No. 109–13, § 106(a)(1)(B), 119 Stat. 231, 310 (2005) (codified at 8 U.S.C. § 1252(a)(4)) (emphasis added).  Accordingly, we now consider whether the language of Section 1252(a)(4) is sufficient to bar Kapoor from raising her CAT claims in a habeas petition.[10]

---

[10] In her petition, Kapoor represents that her habeas action also "arises under" the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et. seq.*, but fails to develop any claim under the APA.  In any case, the APA states that review of an agency decision is not available to the extent that: "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."

In interpreting a statutory provision, our analysis begins with the plain meaning of the text. *See Williams v. MTA Bus Co.*, 44 F.4th 115, 127 (2d Cir. 2022). "[W]here a provision precluding [judicial] review is claimed to bar habeas review, the [Supreme] Court has required a particularly clear statement that such is Congress'[s] intent." *Demore v. Kim*, 538 U.S. 510, 517 (2003). "Implications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead, Congress must articulate specific and unambiguous statutory directives to effect a repeal." *St. Cyr*, 533 U.S. at 299. Additionally, "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is fairly possible, [courts] are obligated to construe the statute to avoid such problems." *Id.* at 299–300 (internal quotation marks and citation omitted).

The questions before us, therefore, are whether Section 1252(a)(4) specifically and unambiguously precludes a court from exercising habeas jurisdiction over Kapoor's CAT claim, and if so, whether the statute unconstitutionally suspends the writ of habeas corpus.

---

§§ 701(a)(1)–(2). To the extent Kapoor attempts to bring her CAT claims under the APA, she cannot do so. Because we find that habeas review of Kapoor's CAT claims is barred by Section 1252(a)(4), Kapoor cannot circumvent this jurisdictional bar by invoking the APA. *See Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (holding petitioner could not bring APA claim in district court to challenge removal order because Section 1252(a)(5) divested district courts of jurisdiction over challenges to removal orders).

Section 1252(a)(4) contains a clear statement of congressional intent to bar all habeas jurisdiction over CAT claims, with narrowly delineated exceptions not relevant here.[11] The statute states that "[n]otwithstanding . . . *section 2241 of Title 28, or any other habeas corpus provision*, . . . a petition for review [of a final order of removal] shall be the *sole and exclusive* means for judicial review of *any* cause or claim under [CAT] . . . ." 8 U.S.C. § 1252(a)(4) (emphases added). By its explicit reference to both 28 U.S.C. § 2241 and "any other habeas corpus provision," Section 1252(a)(4) plainly bars habeas review of CAT claims. *Id.*; *see St. Cyr*, 533 U.S. at 312. The statute makes clear that a petition for review of a final order of removal is the "sole and exclusive means for judicial review" for "any" CAT claim. 8 U.S.C. § 1252(a)(4).

Kapoor argues that this provision can be construed as precluding habeas review of challenges only to final orders of removal without affecting habeas jurisdiction in extradition cases. But the language of Section 1252(a)(4) is far more expansive than Kapoor contends. The paragraph makes clear that a petition for review of a final order of removal is the only means of judicial review for "*any* cause or claim under [the Convention]." 8 U.S.C. § 1252(a)(4) (emphases added). "[T]he word 'any' has an expansive meaning. . . . Here, 'any' means that the provision applies to [claims] 'of whatever

---

[11] Section 1252(a)(4) provides that a petition for review of a final order of removal is the only means of judicial review over CAT claims "except as provided in subsection (e)." Section 1252(e) provides aliens in expedited removal proceedings certain additional forms of judicial review including narrow habeas review of particular claims.

kind.'" *Patel v. Garland*, 596 U.S. 328, 338 (2022) (internal quotation marks and citations omitted). This broad language encompasses CAT claims like Kapoor's made in the extradition context and therefore bars habeas review of those claims.

Moreover, Kapoor's interpretation of Section 1252(a)(4) would render that provision superfluous in light of Section 1252(a)(5). Section 1252(a)(5) provides that a petition for review is the only means of judicial review over final orders of removal, subject to the same exception provided in Section 1252(a)(4).[12] 8 U.S.C. § 1252(a)(5). Thus, Section 1252(a)(5) already precludes habeas review of nearly all challenges to final orders of removal. *See Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 113 (2d Cir. 2008). To hold that Section 1252(a)(4) does the same but only for a subset of claims already covered by Section 1252(a)(5), as Kapoor suggests, would render the former paragraph pointless. *See City of Chicago v. Fulton*, 592 U.S. 154, 159 (2021) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.") (internal quotation marks omitted). Both sections were added or amended in the REAL ID Act to expressly bar habeas review subject to the same exceptions. It would be more than passing strange to imagine that Congress intended, in the very same legislation, to enact one paragraph that does nothing more than is already achieved by another. Thus, the meaning of Section 1252(a)(4) must be different than that of Section 1252(a)(5), and the language of Section 1252(a)(4)

---

[12] Like Section 1252(a)(4), Section 1252(a)(5) also provides that a petition for review is the only means of judicial review of challenges to final orders of removal "except as provided in subsection (e)."

plainly bars *any* habeas review of CAT claims, unless specifically excluded, even beyond the review of final orders of removal.

In reaching this conclusion, we recognize that we are not the first Court of Appeals to consider the effect of the REAL ID Act on federal courts' habeas jurisdiction over CAT claims. The D.C. and Fourth Circuits have both held that extraditees do not have the right to habeas review of CAT claims, while the Ninth Circuit has allowed for the barest review of such claims.

We agree with the D.C. Circuit that the REAL ID Act bars habeas review of an extraditee's CAT claims. Writing for the court, then-Judge Kavanaugh emphasized that Section 1252(a)(4) plainly "states that only immigration transferees have a right to judicial review of conditions in the receiving country, during a court's review of a final order of removal." *Omar*, 646 F.3d at 18. The D.C. Circuit thus held that in light of Section 1252(a)(4), military transferees like the plaintiff—and extraditees like Kapoor—possess no statutory right to judicial review of conditions in a receiving country.

The Fourth Circuit has similarly held that extraditees may not obtain habeas review of CAT claims, though it relied exclusively on Section 2242(d) of FARRA. *Mironescu v. Costner*, 480 F.3d 664, 676 (4th Cir. 2007).[13] As explained above, our Court has previously adopted a

---

[13] The Fourth Circuit also determined that the rule of non-inquiry on its own did not bar habeas review of the Secretary of State's extradition decision. *Mironescu*, 480 F.3d at 673. The Fourth Circuit reasoned that because FARRA imposed an obligation on the Secretary not to extradite individuals if they are

26

narrower construction of FARRA § 2242(d), so we are precluded from following the Fourth Circuit's analytical path. *See Wang*, 320 F.3d at 139–41. But we ultimately reach the same destination in light of the later-enacted Section 1252(a)(4), which, unlike FARRA § 2242(d), expressly prohibits habeas review of CAT claims.

On the other hand, the Ninth Circuit sitting *en banc* could not agree on a coherent approach. In a short *per curiam* opinion that generated five lengthy concurrences and dissents, that Circuit held that the REAL ID Act could be "construed as being confined to addressing final orders of removal, without affecting federal habeas jurisdiction," and therefore allows for exceedingly narrow habeas review of CAT claims brought by extraditees. *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956–57 (9th Cir. 2012). The majority held that a district court may do no more than confirm that the Secretary of State had actually considered the extraditee's CAT claim and found it was not "more likely than not" that the extraditee will face torture if extradited. *Id.* at 957. For the reasons explained above, we are unpersuaded by the Ninth Circuit's interpretation of the REAL ID Act. We read the plain language of Section 1242(a)(4) to unequivocally bar *any* habeas review of CAT claims in extradition

---

likely to face torture, a court could review that decision because the rule of non-inquiry historically only applied absent any federal right to particular treatment in the requesting country. *Id.* at 671–73. As the Fourth Circuit stated, "FARR[A] now has given petitioners the foothold that was lacking when the [Supreme] Court decided [earlier cases]." *Id.* at 671. Although, as discussed below, we do not agree with this analysis, it is of no moment because we conclude Section 1252(a)(4) bars review in any event.

proceedings, and thus we (like the D.C. and Fourth Circuits) part ways with our sister Circuit.

Accordingly, we find that Section 1252(a)(4) is sufficiently clear and unambiguous to bar our habeas jurisdiction over Kapoor's claims under the Convention. [14]   Our inquiry then becomes whether application of Section 1252(a)(4) to bar habeas review of CAT claims in the extradition context violates the Suspension Clause of the Constitution.[15]

---

[14] Because we conclude that Congress has expressly barred federal habeas review of extradition-based CAT claims, we need not decide whether absent such a bar, there would be an individual right to raise such a claim.  As we explain above, the Convention is a non-self-executing treaty—instead, claimants must rely on the rights contained in the Convention's implementing statute and regulations. FARRA sets forth a policy that the United States comply with the Convention and directs the Secretary to prescribe regulations to implement the obligations of the United States under Article 3 of the Convention.  FARRA § 2242(a)–(b).  Those regulations, in turn, disclaim the creation of any personal rights.  22 C.F.R. § 95.4. Whether an extraditee could nonetheless bring a CAT claim under FARRA pursuant to its policy statement or directive to the Secretary, absent the bar currently in place under Section 1252(a)(4), is a question we do not address here. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 288 (2002) (holding that a statute that "speak[s] only in terms of institutional policy and practice . . . cannot give rise to individual rights") (internal quotation marks omitted).

[15] Because we determine that Section 1252(a)(4) unambiguously bars habeas review of CAT claims in the extradition context, we have no occasion to consider the constitutional avoidance doctrine, which applies only "where an alternative interpretation of the statute is fairly possible." *St. Cyr*, 533 U.S. at 300 (internal quotation marks omitted).  In any event, as we proceed to explain, the rule of non-inquiry has always precluded judicial review in extradition proceedings of claims based on anticipated treatment in a receiving country. Accordingly, no serious constitutional concern is raised by Section 1252(a)(4).

Kapoor argues that judicial consideration of the CAT claim in her habeas petition is guaranteed by the Suspension Clause. The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., art. I, § 9, cl. 2. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention . . . ." *St. Cyr*, 533 U.S. at 301; *see also Swain v. Pressley*, 430 U.S. 372, 386 (1977) (Burger, C.J., concurring in part and concurring in the judgment) (noting that "the traditional Great Writ was largely a remedy against executive detention"). Thus, Section 1252(a)(4) would violate the Constitution if it precluded the type of habeas review historically protected by the Suspension Clause. We find no such violation arises because fugitives like Kapoor facing extradition have not traditionally been able to maintain a habeas claim based on their anticipated treatment in a receiving country under the rule of non-inquiry.

The rule of non-inquiry "bars courts from evaluating the fairness and humaneness of another country's criminal justice system, requiring deference to the Executive Branch on such matters." *Hilton v. Kerry*, 754 F.3d 79, 84–85 (1st Cir. 2014) (internal quotation marks omitted). Clear articulation of the doctrine can be traced back to Supreme Court cases that initially set the narrow parameters for habeas relief in the context of extradition generally. In these cases, the Supreme Court limited its habeas review to "an inquiry as to whether, under the construction of the act of congress and the treaty entered

into[,] . . . there was legal evidence before the commissioner to justify him in exercising his power to commit the person accused to custody." *Benson*, 127 U.S. at 463; *see also In re Oteiza y Cortes*, 136 U.S. 330, 334 (1890) (confirming narrow scope of habeas review in extradition proceedings); *Ornelas v. Ruiz*, 161 U.S. 502, 508–09 (1896) (same).

With these general principles established, the Supreme Court first had occasion to consider, in *Neely v. Henkel*, 180 U.S. 109 (1901), the scope of habeas proceedings in extradition cases with respect to claims based on the conditions in the country requesting extradition. In *Neely*, a habeas petitioner claimed that his extradition to Cuba was unconstitutional because it would allow his trial there to be conducted without "all of the rights, privileges, and immunities that are guaranteed by the Constitution." *Id.* at 122. Speaking for the Court, Justice Harlan rejected the claim:

> When an American citizen commits a crime in a foreign country, he cannot complain if required to submit to such modes of trial and to such punishment as the laws of that country may prescribe for its own people, unless a different mode be provided for by treaty stipulations between that country and the United States.

*Id*. at 123; *see also Glucksman v. Henkel*, 221 U.S. 508, 512 (1911) ("We are bound by the existence of an extradition treaty to assume that the trial will be fair.").

Most recently in *Munaf v. Geren*, the Supreme Court reaffirmed this point while considering the habeas petition of a U.S. citizen

whom the military detained in Iraq and intended to transfer to Iraqi custody. 553 U.S. 674, 700–01 (2008). Though the Court expressed "serious concern" over the petitioner's allegation that his military transfer to Iraqi custody would likely result in torture, the Court stated that such a concern is to be "addressed by the political branches, not the Judiciary."[16] *Id.* at 700. The Court noted that the "Judiciary is not suited to second-guess such determinations— determinations that would require federal courts to pass judgment on foreign justice systems and undermine the Government's ability to speak with one voice in this area." *Id.* at 702 (citing The Federalist No. 42, p. 279 (J. Cooke ed. 1961) (J. Madison)). "In contrast, the political branches are well situated to consider sensitive foreign policy issues, such as whether there is a serious prospect of torture at the hands of an ally, and what to do about it if there is."[17] *Id.*

---

[16] In *Munaf*, the Supreme Court reserved judgment on a hypothetical "extreme case in which the Executive has determined that a detainee [in custody] is likely to be tortured but decides to transfer him anyway." 553 U.S. at 702; *see id.* at 706 (Souter, J., concurring). This case does not present that issue. Here, the Department of State has acknowledged that the Convention obligated the United States "not to extradite a person to a country 'where there are substantial grounds for believing that he would be in danger of being subjected to torture'" and confirmed on three separate occasions that the decision to surrender Kapoor "complies with the United States' obligations under the Convention." Gov't App'x 268–69, 274-77, 298 ¶ 8.

[17] This historical division also dovetails with the statutory framework of extradition mapped out above—legal issues such as the sufficiency of evidence regarding the crime charged and interpretation of the applicable treaty are reserved for the judicial officer while determinations about the conditions of the country requesting extradition are reserved for the Department of State. "Both institutional competence rationales and our constitutional structure, which places

The Supreme Court's reasoning in *Munaf* applies with equal force in the extradition context, where nearly all transfers occur pursuant to bilateral treaties signed by the President and ratified by two-thirds of the Senate. In approving extradition treaties, the political branches have made a determination that extradition to specific treaty partners is generally warranted and appropriate while still reserving the Secretary of State's ability to withhold extradition based on any number of considerations, such as the United States' need to comply with its obligations under the Convention or other exceptions enumerated in the treaties themselves.

Like the Supreme Court, this Court has not explicitly identified the rule of non-inquiry by name, but it has repeatedly applied the rule in substance to bar judicial consideration of a receiving country's conditions in the context of habeas proceedings initiated by extraditees. *See Skaftouros*, 667 F.3d at 157 ("[C]onsideration of the procedures that will or may occur in the requesting country is not within the purview of a habeas corpus judge.") (internal quotation marks omitted); *Ahmad v. Wigen*, 910 F.2d 1063, 1067 (2d Cir. 1990) ("The interests of international comity are ill-served by requiring a foreign nation . . . to satisfy a United States district judge concerning the fairness of its laws and the manner in which they are enforced. It is the function of the Secretary of State to determine whether extradition should be denied on humanitarian grounds.") (citation omitted); *Sindona v. Grant*, 619 F.2d 167, 174 (2d Cir. 1980) ("[T]he

---

primary responsibility for foreign affairs in the [E]xecutive [B]ranch, support this division of labor." *Kin-Hong*, 110 F.3d at 110 (citing *United States v. Curtiss–Wright Export Corp.*, 299 U.S. 304, 319–22 (1936)).

degree of risk to [the petitioner's] life from extradition is an issue that properly falls within the exclusive purview of the executive branch."); *Gallina v. Fraser*, 278 F.2d 77, 78 (2d Cir. 1960) [18] ("[W]e have discovered no case authorizing a federal court, in a habeas corpus proceeding challenging extradition from the United States to a foreign nation, to inquire into the procedures which await the relator upon extradition.").

Other circuits, too, have held that the rule of non-inquiry prohibits habeas review of the anticipated treatment of individuals in a foreign country requesting extradition. *See Hilton*, 754 F.3d at 84–85; *Hoxha v. Levi*, 465 F.3d 554, 563 (3d Cir. 2006) ("Under the traditional doctrine of 'non-inquiry,' such humanitarian considerations are within the purview of the executive branch and generally should not be addressed by the courts in deciding whether a petitioner is extraditable."); *Venckiene v. United States*, 929 F.3d 843, 855 (7th Cir. 2019) ("Under the settled and general rule of non-inquiry, in extradition, discretionary judgments and matters of

---

[18] In *Gallina*, which was decided by our Court in 1960, we speculated about a possible exception to the rule of non-inquiry in extreme cases when "the relator, upon extradition, would be subject to procedures or punishment so antipathetic to a federal court's sense of decency as to require reexamination of the principle set out above." *Gallina*, 278 F.2d at 79. Other courts have noted the hypothetical "exception" we mentioned in *Gallina*, but none has applied it. *See Hilton*, 754 F.3d at 87 ("No court has yet applied such a theoretical *Gallina* exception. . . . [W]e decline to apply such an exception."); *Hoxha v. Levi*, 465 F.3d 554, 564 n.14 (3d Cir. 2006) (stating that the *Gallina* exception "remains theoretical, however, because no federal court has applied it to grant habeas relief in an extradition case"). We likewise have no occasion to address such an exception because this case is governed by Congress's express prohibition of habeas review of CAT claims.

political and humanitarian judgment are left to the executive branch.") (internal quotation marks and brackets omitted); *Santos v. Thomas*, 830 F.3d 987, 1007 n.9 (9th Cir. 2016) ("[T]he rule [of non-inquiry] bars the judiciary from preventing the surrender of a fugitive on the basis of humanitarian considerations once extradition has been certified, reserving that decision to the Secretary of State.").

In light of this history, the rule of non-inquiry and the separation-of-powers principles animating that rule must inform our determination of whether Kapoor's petition falls within the protection of the Suspension Clause. *See Boumediene v. Bush*, 553 U.S. 723, 746 (2008) ("The separation-of-powers doctrine, and the history that influenced its design, . . . must inform the reach and purpose of the Suspension Clause."). Kapoor claims that the Department of State failed to meaningfully review her allegation that she will likely be tortured if she is extradited to India. Though her claim is framed as a question of law—*i.e.*, whether the Department met its obligation under the Convention—the claim would require our Court to review the evidence available to the Department when it made its extradition determination. Kapoor effectively asks this Court to review the conditions of the country requesting her extradition and determine how she is likely to be treated if returned [19]—the precise type of

_____

[19] *See* Appellant Br. at 18 ("Petitioner alleges that her extradition would represent illegal government conduct, given that her CAT claim remains unadjudicated by any *Court*") (emphasis added); *id.* at 23–24 (arguing for habeas review of her CAT claim because the "executive does not have unfettered power to extradite[] Monika Kapoor to torture or inhumane treatment"); Appellant Reply Br. at 3 (arguing that this Court has jurisdiction because "[n]o court has made any

question barred by the rule of non-inquiry and that courts have therefore declined to address in the extradition context. *See Munaf*, 553 U.S. at 700 (stating that the fear of torture in a receiving country is "a matter of serious concern, but . . . that concern is to be addressed by the political branches, not the Judiciary").

The historical tradition of refusing to consider habeas petitions challenging the conditions of the country requesting extradition means Kapoor does not present a claim implicating the type of habeas review protected by the Suspension Clause. *See Omar*, 646 F.3d at 19 ("Those facing extradition traditionally have not been able to maintain habeas claims to block transfer based on conditions in the receiving country."); *id.* at 24 ("Congress has no constitutional obligation to grant extradition and military transferees . . . a right to judicial review of conditions in the receiving country."); *see also Thuraissigiam*, 591 U.S. at 112, 117–20 (finding that a statute that eliminated jurisdiction over habeas petition did not violate the Suspension Clause because the petitioner sought relief that fell outside the historical scope of the writ of habeas corpus). Because Kapoor's use of the writ of habeas corpus would not have been cognizable historically, there is no constitutional rule that would bar Section 1252(a)(4)'s divestment of our habeas jurisdiction to hear her extradition-based CAT claim.

---

determination on [Kapoor's] CAT claim" and, instead, they have "relied on the letters from the Secretary of State's office regarding her [CAT] claim").

Accordingly, we conclude that Section 1252(a)(4) deprives this Court of habeas jurisdiction to hear Kapoor's CAT claim.[20]

## III. Conclusion

The United States has adhered to the Convention Against Torture and there is no question that it has thereby bound itself to the treaty's obligation not to return anyone to a country where she is

---

[20] Kapoor also claims that the district court violated her due process rights by: (i) first finding that it had jurisdiction to review her CAT claim during oral argument but then denying jurisdiction in its ruling on the petition, and (ii) failing to address the due process arguments she raised at oral argument and in supplemental briefing. We find these arguments unpersuasive.

*First*, the district court's remarks during oral argument and its decision to ask for additional briefing on the question of jurisdiction make clear that its habeas jurisdiction over Kapoor's CAT claim was an open question the court was still considering. *See* App'x 31.

*Second*, Kapoor failed to articulate a colorable due process claim that would otherwise be sufficient to warrant exercise of habeas jurisdiction. Kapoor's arguments amount to nothing more than the claim that the Indian extradition request was stale because two of the charges against her were dismissed, and the three remaining charges could be resolved by fines (and are therefore not extraditable offenses). However, the Secretary of State provided an Amended Surrender Warrant based only on the three remaining charges, and additional correspondence from the Indian government clarified that those charges are still punishable by imprisonment exceeding one year. The Treaty defines an extraditable offense to be one that "is punishable . . . for a period of more than one year" of imprisonment. Treaty, art. 2. Thus, it does not matter what Kapoor's *actual punishment* may turn out to be; it only matters that the offense is *punishable* by imprisonment of more than one year. *See Yau-Leung v. Soscia*, 649 F.2d 914, 919 (2d Cir. 1981) (discussing a similar treaty provision and concluding that the provision "appears concerned not with the penalties received by any criminal, but with the possible penalties, since such penalties supply a measure of the seriousness with which the crime is regarded").

36

more likely than not to be tortured. Our holding today affirms only that Congress has decided that, in the context of extradition, compliance with that obligation is entrusted to the Secretary of State rather than the courts.

In sum, we hold as follows:

(1) Section 1252(a)(4) bars courts from exercising habeas jurisdiction over CAT claims raised by individuals facing extradition.

(2) Application of Section 1252(a)(4) to bar habeas review of CAT claims brought by extraditees does not violate the Suspension Clause, because the rule of non-inquiry has historically precluded courts from reviewing the anticipated treatment of an individual in a foreign country requesting extradition.

We therefore AFFIRM the district court's dismissal of Kapoor's petition.